[No. 1891.]

## *Ex Parte* Gregorio Mato.

1. Habeas Corpus — Case Overruled.— It was held by this court in Parker's case, 5 Texas Ct. App., 579, that a person accused of a criminal offense had no right, after the presentment of an indictment against him, to inquire, by writ of *habeas corpus*, into the constitutionality of the law under which he was arrested, and that his only means of testing that question was by trial in the appropriate court. Since the rendition of that decision the United States supreme court, in *Ex parte Siebold*, 100 U. S., 371, has held otherwise, and announced the contrary rule that not only after indictment, but even after conviction, the writ of *habeas corpus* is available to inquire into the constitutionality of the law under which the applicant was indicted and tried; and that if the law is determined to be unconstitutional, the prisoner should be discharged, no matter what may be the *status* of his case. Without concurring in the logic of this doctrine, this court adopts it, and, to harmonize its rulings therewith, overrules Parker's case, *supra.*

2. Constitutional Law — Delegation of Legislative Power — Case Stated. The applicant in this case, who was held in custody under an indictment charging him with theft, sought his discharge by means of the writ of *habeas corpus,* upon the ground that the term of the district court at which the indictment was preferred against him was held without authority of law, because, 1. The said term of the district court was fixed by the district judge and not by legislative enactment. 2. Because the acts of the Legislature purporting to confer upon district judges authority to fix the times for holding, and the terms of, the district court in newly organized counties, whenever any unorganized county in their district should become organized, was unconstitutional and void, such acts being an effort on the part of the Legislature to delegate a power it alone could exercise. The act thus called in question, entitled "An act to authorize district judges to fix times for holding courts in newly organized counties," approved April 25, 1882, provides as follows: "Whenever any unorganized county within this State has become organized, there being no time fixed by law for holding district court in such counties, the district judge in whose judicial district such county is situated shall fix times to hold at least two terms of court each year in each of such counties by a written declaration to be forwarded by the district judge to the district clerk of the county, and by him spread on the minutes of the district court. When the times are so fixed, they shall not be changed except by an act of the Legislature." (Acts Called Session, 17th Leg., p. 4.) *Held,* that the act in question is not repugnant to section 1 of article II of the Constitution; it is not a delegation by the Legislature of legislative power, but is an enactment by the Legislature, though dependent for its operative force upon a future contingency, and is therefore an exercise of legislative power within the scope of the Constitution. See the opinion *in extenso* for an elaboration of the question, and for a *resumé* of the authorities bearing upon it.

3. District Court Terms — Case Stated.— The county of Edwards becoming an organized county in October, 1883, the judge of the judicial district in which it is situated, on the 12th day of February, 1884, dispatched to the district clerk of the said county a written notice fixing the terms of court

in said county to commence on *Monday*, the 7th day of July, 1884, and Monday, the 15th day of December, 1884. On the 13th day of the May following, another written order or declaration of said judge was spread on the minutes of the said district court, directing that a term of the district court of Edwards county would convene on the 7th day of July, 1884. It was the term of court held by virtue of this last order that is complained of. *Held*, that, as the 7th day of July, 1884, fell on *Tuesday* instead of *Monday*, the second order does not operate a material change in the first order, inasmuch as both provided that the court should convene on the 7th day of July, 1884. The second was not a new order fixing the term of court, but an order correcting the first, so as to designate by its proper name the day on which the 7th of July, 1884, fell. The objection is hypercritical.

*Habeas Corpus* on appeal from the District Court of Edwards. Tried below before the Hon. T. M. Paschal.

The opinion of the court sufficiently discloses the nature of the case.

The transcript brings up no brief for the applicant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. At a term of the district court held in and for the county of Edwards, to wit, on the 8th of July, 1885, appellant was indicted for theft of property over the value of $20. He was arrested the same day, and on the same day made application to the Hon. Thomas M. Paschal, judge of the thirty-eighth judicial district, for a writ of *habeas corpus*, in which he prayed that upon a hearing of said writ the prosecution against him should be dismissed and he be discharged from custody. In substance, the grounds upon which he based his right to the writ and discharge under it were that the term of the district court then being held, and at which the pretended indictment against him was found and preferred, was being held without any valid authority of law, in this:

1. Because said term of court was fixed by the district judge, and not by legislative enactment.

2. That the acts of the Legislature purporting to confer upon district judges authority to fix the times for holding and the terms of court in newly organized counties, whenever any unorganized county in their districts should become organized, was unconstitutional and void, such acts being an effort on the part of the Legislature to delegate a power it alone could exercise.

The application for *habeas corpus* was granted, and upon the

hearing of the same by the court the applicant was adjudged to be in legal restraint, and was remanded to the custody of the sheriff of Edwards county, to be by him safely kept in default of his giving the bail which had previously been fixed by the court at the sum of $700. From this judgment he prosecutes his appeal to this court. By act of the regular session of the Seventeenth Legislature, approved March 28, 1881, the unorganized county of Edwards was put into the twenty-fourth judicial district and attached to the county of Kerr for judicial purposes. (Acts 17th Leg., pp. 68 and 69.)

An act was passed by the Seventeenth Legislature at its called session, and approved April 25, 1882, which was entitled "An act to authorize district judges to fix times for holding courts in newly organized counties." It provided: "That whenever any unorganized county within this State has become organized, there being no time fixed by law for holding district court in such counties, the district judge in whose judicial district such county is situated shall fix times to hold at least two terms of court each year in each of such counties, by a written declaration to be forwarded by the district judge to the district clerk of the county, and by him spread on the minutes of the district court. When the times are so fixed they shall not be changed except by an act of the Legislature." (Acts Called Sess. of 17th Leg., p. 4.)

Edwards county, being still unorganized, was again attached for judicial purposes to the county of Kerr, in the thirty-eighth judicial district, by the thirty-eighth section of an act of the Eighteenth Legislature, approved April 9, 1883, entitled "An act to redistrict the State into judicial districts, and fix the times for holding court therein," etc. And by the fortieth section of said act it was again further provided that "whenever any unorganized county shall organize, the district judge of the district including such county may designate the times for holding the district court therein, and give the necessary notice of such time, and hold the district court in such county at the times so fixed until otherwise provided by law." (Acts 18th Leg., p. 65.) In October, 1883, Edwards county became a legally organized county.

On the 12th day of February, 1884, the following order or declaration was spread upon the minutes of the district court of said county, viz.:

"Castroville, Tex., February 11, 1884.
"To C. R. Jackson, District Clerk, Edwards Co., Texas:

"Sir—You are hereby notified that the terms of the district court of Edwards county will be held at Leakey, in said county, on Mon-

day. the 7th day of July, A. D. 1884, and on Monday, the 15th day of December, A. D. 1884, and will continue in session one week. You are further instructed to spread this order upon the minutes of the district court of said county.                    T. M. PASCHAL,
        "Judge Twenty-fourth Judicial District, Texas."

On the 13th day of May, 1885, another order or declaration was spread on the minutes of said district court, viz.:

"*To the Clerk of the District Court of Edwards Co., Texas:*

"You are hereby notified to spread upon the minutes of the district court of Edwards county this order, to wit: That a term of the district court of the thirty-eighth judicial district of Texas be held at Leakey in Edwards county, Texas, on the 7th day of July, A. D. 1885, the same being Tuesday, at 9 A. M., and may continue one week. T. M. Paschal, Judge Thirty-eighth Judicial District, Texas."

It was at the term of court held by virtue of this last order that the indictment was found under which appellant was arrested and placed in the custody complained of in his application for *habeas corpus.*

In so far as this last order is concerned, we think it is manifest that it was not intended as a new order, but rather a correction of an error which had inadvertently been committed in the first order, the error in the first being that the July term was fixed to commence on *Monday*, the 7th of July, when in fact the 7th day of that month did not fall on Monday, but on Tuesday, as stated in the last order. We do not consider this second as a material, if, indeed it can be considered a change of the original order. The original order fixed the time for the convening of the court on the 7th of July; the second does the same thing. The court could not have commenced under the first before the 7th day of the month. The latter order does not change the time, but orders it to be held at the same date, and no other change is made in the first order save an announcement of the fact by the court in the record that the 7th of July came on Tuesday, and that therefore the court would meet on Tuesday. Without this amendment or declaration we apprehend that the court could not and would not have convened before the 7th day of July, whether that day fell on Monday or Tuesday. We take it that the original order or declaration has been changed in no material respect worthy of notice or contention, and shall therefore treat the first order as being of the same binding force and effect as though no second had been made.

The question then is, did the district judge have the right legally

to make the first? Appellant affirms that he did not, because the law under which he assumed to exercise the authority was and is unconstitutional and void.

Just at this point it may be well to dispose of a preliminary question which occurs to us with regard to plaintiff's right, after indictment found, to inquire into the constitutionality of the law under which he is held for trial, by means of the writ of *habeas corpus.* In Parker's case, 5 Texas Ct. App., 579, this court held that he could not after indictment thus inquire into the constitutionality of the law under which he was arrested. " He should test the validity of that question by means of trial in the appropriate court." This is the rule as it obtains in Michigan, Missouri, Nebraska and Iowa. (Church on Hab. Corp., p. 493.) Since the Parker decision *supra,* the supreme court of the United States, in *Ex parte Siebold,* 100 U. S., 371, have held otherwise, and the rule therein announced is that, not only after indictment but even after conviction, that court will by means of the writ of *habeas corpus* inquire into the constitutionality of the law under which the applicant was indicted and tried, and that if the law is determined to be unconstitutional the prisoner will be discharged, no matter what may be the *status* of his case. Whatever may be our individual opinion as to the expediency of such practice, we will hereafter, for the sake of harmony, follow the rule in *Ex parte Siebold* upon this point, and the contrary doctrine held in *Ex parte Parker,* 5 Texas Ct. App., 579, will be overruled.

Coming, then, to the consideration of the law in question, it is asserted to be unconstitutional because it attempts to delegate legislative power to district judges by authorizing them to designate the times for holding district court in newly organized counties within their districts.

It is provided by the Constitution that " the powers of government shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." (Const. of Texas, art. II, § 1.)  "The legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled "The Legislature of the State of Texas." (Const., art. III, § 1.)

With regard to district judges and their judicial districts it is,

amongst other things, provided that "they shall hold regular terms of court in each county in the district twice in each year, in such manner as may be prescribed by law. The Legislature shall have power by general act to authorize the holding of special terms when necessary, and for holding more than two terms of the court in any county for the dispatch of business," etc. (Const., art. V, sec. 7.) These are all the constitutional provisions relating to or bearing upon the question.

We might assume, and with great plausibility, in the opinion of the writer, that the above quoted provision from section 7, article V, giving the Legislature "power by general act to authorize the holding of special terms when necessary," was decisive of the matter. Such fixed terms of court are not "regular;" they can only be fixed for counties in which no regular terms have been provided by law, and they are fixed in a mode and manner different from that provided generally for the counties of the State. They are "special" in that they apply only to newly organized counties. It is true that additional "special terms" may be provided for and held in counties where regular terms are already provided." (Gen. Laws 16th Leg. (1879), pp. 42, 43.) But that such terms are called "special" is by no means conclusive that only such terms are "special" in contemplation of the constitutional provision. By the use of the words "special terms," we think it clear that the framers of the Constitution intended such terms as were necessary, and where the exigencies had not been provided for otherwise in the general law. These terms may further be said to be "special" in that they are fixed almost identically in the same mode and manner as are special terms when provided for and fixed in counties having regular terms (Acts 16th Leg., p. 42); and, moreover, they are but temporary terms fixed to meet the exigencies and necessities of the county for the time being, until the Legislature may meet and otherwise provide. If from the facts and reasons stated such terms may properly be called "special" terms, then the authority to pass the law and the law itself are in perfect accord with the constitutional provision quoted, because said provision confers the power upon the Legislature to pass general acts with regard to special terms, and the act itself is a general act.

Independently of this view of the question, however, does the act in question delegate to the judge legislative powers in contravention of section 1 of article II of the Constitution? The Legislature cannot delegate any of its powers unless authorized to do so by the Constitution. (*Willis* v. *Owen*, 43 Texas, 42.) Mr. Cooley says

one of the settled maxims of the law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain. . . . "But," he says, "it is not always essential that a legislative act should be a completed statute which must in any event take effect as law at the time it leaves the hands of the legislative department. A statute may be *conditional*, and its taking effect may be made to depend upon some subsequent event." (Cooley's Const. Lim. (4th ed.), pp. 141, 142.)

In Locke's Appeal, Agnew, J., uses this forcible language: "To assert that a law is less than a law because it is made to depend upon a future event or act is to rob the Legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future and impossible to be fully known." Again he says: "The true distinction I conceive is this: The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." Again he says: "If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is uncertain, unknown and contingent can be the subject of law." (72 Pa. St., 491.) In *Moers* v. *City of Reading*, Ch. J. Black says: "Half the statutes on our books are in alternative, depending on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. *But it cannot be said that the exercise of such a discretion is the making of the law.*" (9 Harris, 188.)

In his dissenting opinion in Locke's Appeal, *supra*, Ch. J. Sharswood says, "there are a good many acts of executive administration which they (the Legislature) can delegate to the courts, or to the municipal corporations, or to the people of the different districts. . . . Acts of executive administration are not acts of legislation in the sense in which it was decided that the Legislature has no power to delegate its authority."

In *Bull* v. *Read*, 13 Gratt., 78, it is said: "Now if the Legislature may make the operation of its act depend on some contingency

thereafter to happen, or may prescribe conditions, it must be for them to judge in what contingency and upon what condition the act shall take effect. They must have power to prescribe any they think proper."

In *King* v. *Reed*, 43 N. J. L., 186, there was a provision in an act for the construction of a sewer which should receive drainage from three towns, and commissioners were by the act to be subsequently appointed, whose duty it was to ascertain the entire cost of the improvement and divide it among the towns in proportion to the benefits received by the land in each; *held* not void as an attempt to delegate legislative power. In that case Judge Cooley is quoted as saying: "If the rule is prescribed which in its administration works out the result, that is sufficient; but to refer the making of the rule to another authority would be in excess of legislative authority." (Cooley on Taxation, 50.)

In *Harriman* v. *The State*, 2 Iowa, 270, where the question was as to the constitutionality of an act authorizing judges to hold special terms of the district court where the Constitution provided that such terms of the district court should be held "at such times and places as might be prescribed by law," it was said: "But, had the Legislature conferred upon the judges by statute authority to prescribe the times generally of holding their courts, would it not still be done by authority of law? It would still be a regulation emanating from the supreme legislative and only authorized power, within the general meaning and spirit of the organic law, if not within its strict letter."

These are authorities from other States. Our own supreme court has given expression to its views upon the subject in perfect harmony with the authorities cited, if not in equally as emphatic and pronounced language. Chief J. Moore, in *San Antonio* v. *Jones*, 28 Texas, 19, says: "The Legislature may grant authority as well as give commands, and acts done under its authority are as valid as if done in obedience to its commands. Nor is a statute whose complete execution and application to the subject-matter is by its provisions made to depend on the assent of some other body a delegation of legislative power. The discretion goes to the exercise of the power conferred by the law, but not to make the law itself. The law in such cases may depend for its practical efficiency on the act of some other body or individual; still it is not derived from such act but from the legislative authority. Legislation of this character is of familiar use."

In the case in hand we cannot see how the duty to fix the times

for holding courts in newly organized counties, imposed by the law upon the district judges, can in any manner be called a delegation of legislative power. The legislative act, in so far as it made provision for the holding of such terms of court, was not only constitutional, but full and complete as far as it was practical or possible to make said act. Its operative effect was necessarily dependent upon a contingency, viz., the organization of the county. When that contingency should happen, the law only required the judge to appoint the times for its effective operation. He certainly exercised no discretion and had no hand in making any portion of the law under which he was acting. With that he had had nothing to do. His act in exercising the authority conferred by fixing the times under the law was, as is denominated by Judge Sharswood in Locke's case, *supra*, but "an act of executive administration," which the Legislature could rightly, and as we believe constitutionally, confer in order to render effectual and operative its own "rule of conduct" in the premises.

We find no error in the judgment appealed from. It is therefore affirmed with judgment against appellant for costs of this proceeding.

*Affirmed.*

[Opinion delivered October 24, 1885.]